In the Matter of the Application of FRANK OYSTER, Also Spelled FRANK OJSTER, Petitioner, for a Mandamus Order against SLOVENE NATIONAL BENEFIT SOCIETY OF THE UNITED STATES OF AMERICA, Respondent.

Supreme Court, Bronx County, January 4, 1935.

*Hyman L. Braison*, for the petitioner.

*Harry M. Justiz*, for the respondent.

COTILLO, J.   The respondent is a foreign fraternal benefit society organized and incorporated under the laws of the State of Illinois, and doing business in the State of New York pursuant to section 237 of the Insurance Law.

The petitioner, a man over the age of seventy years, was a member in good standing for a period of twenty-eight years.   He was a charter member of respondent's Branch Lodge Slovene No. 56,

New York, since 1906, and had served as treasurer of such branch for fourteen years. He was expelled on March 1, 1934. At all times up to his expulsion he was the owner of a certificate issued by the respondent for a death benefit of $600. In addition, at the time of his expulsion, the petitioner's assessment on dues and membership in respondent entitled him to a daily sick benefit, disability benefits, cash withdrawal value and paid-up insurance, and what is known as a compromisory claim and in addition his family to funeral expenses. His action attempting to enforce his compromisory claim was the cause of his expulsion from the society.

This compromisory claim is provided for by section 22 of article XXIV of the by-laws of the organization, which reads as follows:

"Sec. 22. Compromisory claims may be paid from the sick benefit fund as follows: members who have held membership in the Society for at least ten years and have not received the maximum amount of sick benefit as provided by the sick benefit scale, shall be entitled to $100.00 compromisory claim for each $1.00 daily sick benefit. Members who have held membership in the Society for twenty years or more, and who have not received the maximum amount of sick benefit provided by the sick benefit scale, shall be entitled to $200.00 compromisory claim for each $1.00 daily sick benefit. Compromisory claims shall be paid only if member shall have been pronounced incurable or disabled by at least two physicians, and then only if application is made by member, or if it is so decided by the Supreme Board. Member shall cease to pay the sick benefit dues immediately on the receipt of the compromisory claim, and from that date he shall no longer be entitled to sick benefit. * * * Before making any such payment, the member shall present to the branch Committee certificates from two physicians, selected either by the Branch or the Administrative Committee. The examination of such member shall be conducted in the presence of either the local Sick Committee, a member of the Supreme Sick Committee or his duly empowered representative, and in all cases he himself shall bear the expenses of such examination. In case such examination is not satisfactory, the Supreme Secretary, or Secretary of the Sick Benefit Department, shall order examination by a third physician."

Pursuant to the terms of this section, the petitioner on August 1, 1932, submitted his medical examiner's report and made application through his local branch of the respondent for a compromisory claim. On August 20, 1932, his claim was rejected. This rejection, the petitioner claims, was arbitrary and deliberate, as the petitioner at that time was over sixty-nine years old and the respondent knew he was ill and disabled from doing any kind of work. Thereafter

an action was commenced by the petitioner in the Municipal Court of this city and a judgment rendered in his favor by the trial court was reversed by the Appellate Term and his complaint dismissed. During the progress of this trial and appeal the respondent continued to accept petitioner's monthly assessment and continued to pay sick benefits up to and including March 1, 1934, a period of one and one-half months after the decision by the Appellate Term. On March 17, 1934, the respondent after refusal by the local branch to expel the petitioner expelled him as of March 1, 1934, pursuant to section 22 of article XX of the by-laws. This section provides that "Any member, or any Supreme Officer, or any subordinate Branch instituting a lawsuit in any civil court against the Society, before his or its case has been passed upon by all judicial authorities of the Society from the first to the last instance, shall be immediately expelled from the Society. *Such a member shall be expelled by the local secretary in the same month in which the offense has been committed, and the Supreme Secretary shall be notified to that effect.* Any Branch failing to expel such a member shall be tried and punished with severe penalty and the member shall be expelled by the Supreme Secretary. Should the Branch commence a law suit against the Society before the final settlement of its case hereunder, it shall be expelled by the Supreme Secretary as soon as the latter obtains all necessary evidence. If any Supreme Officer sues the Society in any civil court before his case is disposed of by the highest judicial authority, he shall be expelled from the Society by the Trustee's Committee without delay upon the receipt of the necessary proofs."

The petitioner bases his right to reinstatement on three grounds: (1) That the provision of respondent's constitution and by-laws that in no case shall a member bring any matter to a court of law without exhausting his remedy within the society is unreasonable, arbitrary, tyrannical, a denial of justice too cumbersome and should not be enforced; (2) the expulsion of the respondent causes the forfeiture of important vested rights; (3) the provisions of respondent's by-laws for expulsion without an opportunity to an expelled member to be heard is against public policy. On the other hand, the respondent claims (a) that the petitioner was expelled from the respondent pursuant to its by-laws, which constitute a contract between the petitioner and respondent and which is binding on both; (b) the petitioner is guilty of laches as he did not commence these proceedings until nine months after his expulsion; and (c) the court cannot grant an order of peremptory mandamus where the facts are in dispute.

There can be no question but that as a general rule by-laws of an organization constitute a contract binding on both the members

and the organization (*Matter of Haebler* v. *N. Y. Produce Exchange*, 149 N. Y. 414; *Cabana* v. *Holstein Friesian Association*, 196 App. Div. 842), and that ordinarily no court will intervene if a member is expelled from a benevolent society in accordance with the provisions of the by-laws. (*People ex rel. Beharka* v. *National Slavonic Society*, 153 App. Div. 885; *People ex rel. Brewster* v. "*Old Guard*," 87 id. 478; *Biskupski* v. *Pospisil*, 27 N. Y. Supp. 1018.) However, to be valid and binding, the by-laws of any organization must be reasonable. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159.) The by-law which it is conceded the petitioner violated is the one concerning exhaustion by members of all remedies provided for by the by-laws. This section, designated as article XX, section 2, provides: "All matters of dispute originating among the members of a branch, complaints against the individual members or whole Branches for violations of the By-laws or other provisions in force, charges against the branch officers or supreme officers or other committee members of incapability, serious neglect of their official duties or misuse of their offices, all complaints against members for slandering of Supreme Officers, grievances of the individual members or whole Branches, feeling that an injustice has been done to them on the part of another member, Branch or Society — all such matters shall be settled within the Society by the above mentioned tribunals, which shall exercise jurisdiction successively in order from the lowest to the highest, as provided by this Article. It shall not be allowed to try to settle before the Society's judicial power any family affairs or private controversies. No member shall have the right to seek satisfaction outside his Branch until his branch has disposed of his case; no member, and no local branch has the right to seek satisfaction outside of the Society, until the highest Society trial court shall have rendered its decision; no Supreme Officer or other committee member shall have the right to seek satisfaction from the Convention, or referendum or outside the Society until his case is passed upon by a two-thirds majority of the Supreme Board."

The by-laws by article XX, section 1, set up the judicial structure of the respondent as follows: " The Society's Judicial power shall consist of four tribunals, to wit: A Branch trial committee, Supreme Judicial Committee, Supreme board and referendum or Convention."

Sections 3, 19 and 20 of article XX provide the *modus operandi* of taking litigation through the forums of the organization and are as follows:

" Sec. 3. The Branch trial shall be the first tribunal for individual members, local officers and supreme officers as members, who have been charged with violation of the By-laws, or any other provisions

in force, by an individual member or group of members and for settling any grievances within the jurisdiction of the Branch trial committee."

" Sec. 19. Any party, whether a defendant or complainant, not satisfied with the decision of the Branch, shall have the right of appeal to the Judicial Committee within thirty days from the date of the decision. Any appeal made after expiration of thirty days shall be invalid and the decision of the Branch shall be final."

" Sec. 20. Any member not satisfied with the decision of the Judicial Committee shall have the right of appeal to the Supreme Board, providing such appeal shall be taken within thirty days from the date of official notice stating the decision of the Judicial Committee and published in the organ. Such appeals shall be addressed to the Supreme Secretary. Only cases and disputes of importance, established as such by a one-third majority of the Supreme Board, may be appealed to referendum; all other cases of appeal shall be presented to the Supreme Board as the highest authority except cases which concern sick benefit, which may be appealed either to referendum or to the convention. Appeals to the convention or referendum shall be sent to the Supreme Secretary. Any appeal taken after the expiration of thirty days shall be invalid and the decision of the previous authority shall be final. The decision of the Convention or referendum is final and there is no appeal from it. Members making appeals to the Convention have no right of appeal to referendum, and members appealing to the whole Society through a referendum vote, cannot submit their cases to the Convention."

The meetings of the supreme board are held in January and July of each year (By-laws, art. VII, § 2), and the meeting of the convention is held every four years (By-laws, art. VII, § 1). It is thus apparent that no certain relief or decision could be obtained before July 1, 1937, and petitioner, therefore, would be prevented for a long period from obtaining a speedy determination of his rights. These provisions I hold to be unreasonable. The question of reasonableness of by-laws of organizations of this kind have held the attention of our courts in a great number of instances.

The case of *Matter of Brown* v. *Supreme Court* (66 App. Div. 259; affd., 176 N. Y. 132) was, as is the instant case, an application for a peremptory mandamus order to reinstate the petitioner in the order of Foresters and restore to him his rights. In that case Brown commenced an action in a court of law in violation of the existing by-laws which also provided for successive appeals, the last body of which would not have met for some eighteen months. (In the case at bar, it is four years.) Justice SPRING, speaking for

the Appellate Division, stated: " While due force will be given to the contract made by any member of one of these mutual benefit societies, it cannot be expected that the State courts will abdicate their jurisdiction and be supplanted by courts provided for by the constitution and laws of the Association. And wherever an unreasonable or unjust restriction or burden is put upon a member of a fraternal society, the courts will interfere to protect the rights of such member. We are disposed in the present case to coincide with the trial justice in his conclusion that the regulations concerning appeals are unreasonable. * * *

"Any requirement which holds in abeyance the status of an alleged member of the order for two years is unreasonable."

It would be a denial of justice to require the relator to go through this expensive series of appeals and in the meantime forego his sick benefits. The expense of doing this would be almost prohibitory.

I had occasion to pass upon the reasonableness of the by-laws of an organization recently, and held in *Blek* v. *Wilson* (145 Misc. 373) as follows: " There can be no doubt that anyone joining an organization of this kind agrees to abide by all the rules and regulations laid down in the constitution and the by-laws of the organization, except that he cannot be said to agree to abide by any rule or regulation which is unfair, unreasonable, and arbitrary, and which would tend to deprive him of rights guaranteed him by the Constitution. Although he has selected the tribunal to pass upon any acts of his which may be in conflict with the constitution of his organization, nevertheless, if this tribunal is so constituted, or if the constitution of the organization itself is so unfair, unreasonable and arbitrary as to deprive him of a fair trial, he may appeal to this court, even if he fails to exhaust the remedies accorded him by the organization."

And in *Irwin* v. *Possehl* (143 Misc. 855) it was held in passing upon by-laws as follows: " The organization has the right to construe and pass upon any constitution and conditions designed for the mutual or common welfare of its members which are not violative of sound public law, reason or morality. The right exists, also, within the same broad limits, to legislate, govern, administer, construe, and decide for the members in their calling or industry and their dealings and relations with one another arising therefrom within the organization. These rights will be respected and protected by the public courts. If and when such union legislation or acts of government or administration, or any purported construction or decision transcends reason or morals, or violates public law or rights guaranteed to the individual members, the courts, their jurisdiction being properly invoked, with equal vigor will

hear the cause and safeguard, limit, and restrain the illegal act within the bounds prescribed for lawful conduct. The constitution and laws of every labor organization are to be judged and construed in this State and country according to well-conceived ideals and principles of law ordained by a democratic people proud of their heritage and jealous of the protection of their rights of equal opportunity, of voice in the selection of local and general officials, in taxation, the appropriation and expenditure of money for governmental purpose, and of the right and opportunity of assembly and freedom of speech."

In view of this ruling on the reasonableness of the by-laws, it is unnecessary to take up any further the other claims of the petitioner. The order of mandamus is a drastic remedy and should not be allowed to aid one who sleeps on his rights. While no statutory limitation is placed upon the issuance of such an order, yet the courts have indicated by decisions that laches will defeat the petitioner who delays making the application. (*Matter of Williams* v. *Pyrke*, 233 App. Div. 345, where the court held: " While there is no statutory limitation of time within which an order of mandamus may issue, the four months' limitation for a certiorari order to review a determination [Civ. Prac. Act, § 1288] has been held by analogy to apply. If application for the order of mandamus is not made within that period, it should be denied, unless the delay is satisfactorily explained.")

I think, however, that the delay can be satisfactorily explained when one takes into consideration his age, mental attitude and physical condition. I am familiar with the fact that a peremptory mandamus order cannot issue where there are disputed questions involved. In the present application there can be no disputed questions of fact. The plaintiff instituted a civil action, he was expelled without trial from the organization, the by-laws are unfair and unreasonable.

The motion for an order of peremptory mandamus is granted. Settle order.