## HOFF v. ST. PAUL–MERCURY INDEMNITY CO. OF ST. PAUL.

### No. 211.

Circuit Court of Appeals, Second Circuit.

Jan. 14, 1935.

Herbert Plaut and Plaut & Davis, all of New York City, for appellant.

N. Levan Haver, of Kingston, N. Y., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a summary judgment upon pleadings and affidavits in an action to recover upon a policy insuring one, Basso, against liability for injuries caused by a motor-car. Basso is not the plaintiff, but Hoff, the injured person, who sued under section 109 of the New York Insurance Law (Consol. Laws, c. 28), which requires all liability policies to give the injured person a right to sue in the circumstances which here existed. The defense is that Basso did not "render to the Company all reasonable cooperation and assistance" in preparing the defense of the action of Hoff v. Basso. This was a valid plea if true, for the courts of New York have held that the injured party is subject to all defenses that would be good against the insured in an action brought by him on the policy. Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443; Seltzer v. Indemnity Ins. Co., 252 N. Y. 330, 169 N. E. 403.

The facts as they appeared in the pleadings and affidavits were that a car which Basso was driving collided with a car in which Hoff was riding and injured him. Hoff sued Basso and his wife, and Basso turned over the defense to the company, relying upon his policy. The cause came on for trial in the state court at Kingston, New York, in October, and Basso attended, being paid by the company for his fare and his lodging, but not, as he said, for his meals. A settlement was then reached, which later fell through for reasons not here important. Thereafter the cause came on again for trial at Kingston at the December term. As the time approached the company was unable to find Basso until just before the case was called. Finally one, Rebecchi, an employee of the company, did

find him, but the stories diverge as to what took place between them. Rebecchi swore that he told Basso of how close at hand the trial was and that he was needed as a witness; to which Basso answered that he would not go to Kingston at all, not even for $1,000. Nevertheless, Rebecchi offered him $9, enough for his fare to Kingston and back, and $2.56 besides; but he did not subpœna him. On the other hand Basso denied that he had refused to go to Kingston; he said that he had only reminded Rebecchi that his meals had not been paid for on the first trip, and had added that he would not go again unless his expenses were paid in advance. He further denied that Rebecchi had offered him $9. At any rate, when the case came on for trial, the company had no witnesses and was forced to allow an inquest to be taken against Basso. The judge in the case at bar gave judgment upon the policy because of the company's failure to subpœna Basso at the trial, which in his judgment showed a lack of diligence in defending the action.

█ █ The discordant stories of the interview must be settled by a jury if a different result follows upon the truth of each. The New York decisions settle it that conflicts of testimony which are not patently a sham cannot be disposed of summarily. General Investment Co. v. Interborough R. T. Co., 235 N. Y. 133, 139, 139 N. E. 216; Croker v. Croker, 252 N. Y. 24, 26, 168 N. E. 450. Rebecchi's story, if true, made out a breach of Basso's promise reasonably to co-operate and help the defense; he was a necessary witness, the very driver of the offending car, and he had refused even to attend the trial. This was a breach of his covenant, whose performance was a condition to any recovery upon the policy. Hutt v. Travelers' Insurance Co., 110 N. J. Law, 57, 164 A. 12; Schneider v. Autoist Mut. I. Co., 346 Ill. 137, 178 N. E. 466; Schoenfeld v. N. J. Fidelity, etc., Co., 203 App. Div. 796, 197 N. Y. S. 606. Indeed it was not necessary to the company's success in the action at bar to show that Basso had repudiated his obligation to help the defense. Although it is true that the company promised in the policy to pay all expenses of defending the action, that did not require them to be paid in advance; and Basso was bound to go at his own initial expense, unless he had some excuse. He says that the company had not fully paid the expenses of his October trip; if that was true, or if he had no money of his own, he might insist upon payment in advance of his fare and return, and of one day's expenses in Kingston, provided he could not go and come in a day. Unless he did and was refused his duty to go remained, though unrepudiated. All this was a matter for a jury.

From what we have already said it is apparent that we take a different view from the judge as to the company's duty to subpœna Basso. There is indeed some doubt in our minds whether such a subpœna would have been valid at all; Basso, not the company, was defendant in the action of Hoff v. Basso. True, the company was conducting the defense, and had retained Basso's attorney for him, but whether a subpœna served by a man's own attorney upon himself in a cause in which he was at once witness and party, would be a valid writ we have been unable to learn from the books. Be that as it may, it was no duty of the company to do so; Basso had promised to appear and testify and that, so far as the company was concerned, established a duty quite as effective as though he had been subpœnaed. Finally we can find but little relevance to the issues here in the company's supposed lack of diligence in defending Hoff v. Basso, if it was not in fact diligent. Basso's defection, if unexcused, was a breach of condition, as we have said; under all ordinary circumstances it would be a complete bar to recovery on the policy. Perhaps, though unexcused, it might nevertheless not be a bar, if the plaintiff made it appear that the company had no real defense at all, only a sham defense; that it did not need Basso, because Basso could say nothing to excuse the collision, that his appearance would have been a prejudice, even though he did his best to help the defense. It is scarcely necessary to say that the affidavits proved nothing of the kind, assuming that affidavits ever could. The replication outlined above would indeed be a hard one to establish and ought to be proved up to the hilt. Only as some evidence upon that issue can we see how the company's lack of diligence was material.

Judgment reversed; trial ordered.